**IN THE UNITED STATES DISTRICT COURT,**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **Jane Doe, in her individual capacity,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **Vs.** | : | **Docket No.** |
| | : | |
| **Rowan University and Dr. Jeffrey Greeson in his** | : | **JURY TRIAL DEMANDED** |
| **individual and official capacities,** | : | **CIVIL ACTION-LAW** |
| **Defendants.** | : | |
| | : | |

---

### VERIFIED COMPLAINT

Plaintiff by and through their undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard her rights under the United States Constitution, State, and Federal law, and in support thereof alleges the following:

### VERIFIED COMPLAINT

Plaintiff by and through their undersigned attorneys, brings this Complaint against the above-named Defendants, agents, and successors in office, to safeguard her rights under the United States Constitution, State, and Federal law, and in support thereof alleges the following:

**1**

## PRELIMINARY STATEMENT

1. Plaintiff Jane Doe[1] is a PhD student at Rowan University (the "University"). She is presently a student in the University's clinical psychology PhD program. She has a GPA of 3.879 and has no disciplinary marks on her record. Furthermore, she has received glowing reviews from her clinical supervisors every year that she has been in the program.

2. Ms. Doe additionally is employed by the University in the capacity of an adjunct faculty, where she teaches an undergraduate course in psychology.

3. Starting in the August 2019 and continuing until around January 2021, Ms. Doe was subjected to ongoing and repeated sexual harassment from her professor and PhD mentor, Defendant Dr. Jeffrey Greeson.

4. More specifically, Defendant Greeson repeatedly asked Ms. Doe out on dates. This included Defendant Greeson asking Ms. Doe out to lunch and dinner on numerous occasions, and to go out for drinks late at night. Notably, one of Defendant Greeson's requested dates was at a bar after midnight.

5. On other occasions, Dr. Greeson would invite Ms. Doe to his office, so that they could be alone. He would then close the door and forcibly hug her without her consent, by pressing his body against hers.

6. Throughout this time, Ms. Doe turned down his requests for dates.

---

[1] The Plaintiff is using Jane Doe to protect her identity and to shield herself from additional sexual harassment and retaliation by faculty and staff at the Defendant University.

7.  Ms. Doe told Defendant Greeson, in July 2021, that she was leaving his lab, because he would not stop asking her for dates and making advances. Defendant Greeson, however, would not *take no for an answer*.

8.   In response to Ms. Doe not agreeing to date him, along with her request to leave his lab, he told her that if she left his lab, he would "do everything in [his] power to get [her] dismissed from the program."

9.  On August 16 and August 18, 2022, Ms. Doe took her qualifying PhD examination. She passed six out of seven subject areas. The only area she failed was the area that Defendant Greeson graded.[2] Ms. Doe needed to pass all areas of the examination in order to remain in the PhD program. By failing her, Defendant Greeson now had the pretextual justification to remove her from the program.

10. Defendant Greeson, in other words, kept his promise to remove Ms. Doe from the program because she turned down his advances.

11. On or around October 6, 2022, Ms. Doe timely appealed the examination grade to the psychology department, which was scored by Defendant Greeson. Then, on October 10, Ms. Doe filed a Title IX complaint with the University based on Dr. Greeson's sexual harassment.

12. From October 10, 2022, and continuing through the date of this complaint, the University conducted a Title IX investigation. The Title IX investigation and complaint process is ongoing as of the date of this filing.

13. On July 11, 2023, the University informed Ms. Doe by letter that it would be dismissing her from the PhD program, pending any hearing and the grade appeal process. Ms. Doe

---

[2] There was a second grader for this section of the examination. That professor is known to be a close colleague and collaborator with Defendant Greeson.

timely appealed and participated in an appeal hearing at the department level on August

10, 2023. She subsequently participated in a second hearing at the Dean's level on

September 8, 2023.

14. The hearing panel at the Department level denied Ms. Doe's appeal. Ms. Doe timely

appealed the panel's decision and participated in the final appeal hearing at the Dean's

level on September 8, 2023. In the middle of the appeal process, on August 23, 2023, the

University took steps to illegally remove her from the program by revoking her student

and adjunct faculty status while her decision was pending at the Dean's level.[3]

15. During the Title IX investigation, the University and its staff repeatedly retaliated against

Ms. Doe. This included the University placing and keeping Ms. Doe on probation[4] for the

fall 2023 semester before the Title IX complaint process was completed and before the

final appeal hearing took place; the University revoked Ms. Doe's parking pass during the

Title IX process and before the appeal process was completed; The University forced Ms.

Doe to withdraw from the class in which she was registered for the fall 2023 semester,

during the Title IX process and before the appeal process was completed; it informed Ms.

Doe that she could not bring her Title IX advisor/attorney to the final appeal hearing[5],

even though she had brought her Title IX advisor/attorney to all of the prior hearings;

when in-house counsel made faces and gestures in the middle of Ms. Doe's appeal

hearing when she testified about Title IX and procedural concerns Ms. Doe had; when

in-house counsel began laughing in the middle of Ms. Doe's testimony about her Title IX

and procedural concerns; when in-house counsel attempted to force Ms. Doe's attorney to

---

[3] The University removed Ms. Doe in the middle of a Title IX investigation in violation of 34 CFR 106.71.
[4] It is notable that the probation includes stripping Ms. Doe of the ability to participate in her PhD program. Here the University is preventing her from conducting research, attending class, seeing patients, and teaching her undergraduate class.
[5] The Defendant University, ultimately, allowed Ms. Doe to bring her attorney/advocate to the hearing, but only after Ms. Doe and her attorney had to repeatedly make this request and after much resistance from the University.

testify in Ms. Doe's hearing to "correct" her testimony regarding Ms. Doe's Title IX and procedural concerns; when in-house counsel Wolak then testified herself regarding her opinion that Ms. Doe's Title IX and procedural concerns were false; when the University removed Ms. Doe from her clinical practicum placement at the University of Pennsylvania where she was expected to see her patients;  and when the University preemptively terminated Ms. Doe's adjunct faculty position for the fall 2023 during the Title IX process and before the appeal process was completed.

16. The University is now taking steps to dismiss Ms. Doe from the PhD program before it renders its final decision in the appeal process[6] and before the Title IX process is complete.

17. Again, Defendant Greeson promised Ms. Doe that he would  "would do everything in [his] power to get [her] dismissed" from the PhD program after she turned down his advances. He is now keeping that promise, as the University and his colleagues are dismissing Ms. Doe from the program.

## **JURISDICTION AND VENUE**

18. This court has jurisdiction under 28 U.S.C. §1331, as the causes of action contained herein invoke federal question jurisdiction, as Plaintiffs bring claims arising under federal law.

19. This court has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367.

---

[6] Though the University has a final, third level to the appeal process, it is still denying her access to her program and has illegally removed her from all aspects of her education.

20. Venue for this action properly lies in this Judicial District pursuant to 28 U.S.C. §1391(b) because the events that give rise to the claims in this action occurred in this District.

**PARTIES**

21. Plaintiff  Jane Doe is an adult individual residing in New York, New York.[7] Ms. Doe is presently a PhD student who is enrolled at the Defendant University.

22. Defendant Rowan University is a public university and federal funds recipient, believed to be doing business and with its principle offices at 201 Mullica Hill Road, Glassboro, New Jersey 08028.

23. Defendant Dr. Jeffrey Greeson is an adult individual who is employed by Rowan University, and who is believed to be doing business at 201 Mullica Hill Road, Glassboro, New Jersey 08028. Defendant Greeson maintains several supervisory roles at the University, which includes overseeing the University's Mindfulness Stress and Health lab, mentoring undergraduate and graduate students, and, upon information and belief, delegating duties to assistant professors.

**FACTUAL ALLEGATIONS**

24. Again, Plaintiff Doe is a PhD student at Rowan University (the "University"). She is presently a student in the University's clinical psychology PhD program.  She has a GPA of 3.879 and has no disciplinary marks on her record. Furthermore, she has received glowing reviews from her clinical supervisors every year.

25. Ms. Doe additionally is employed by the University in the capacity of an adjunct faculty professor, where she teaches an undergraduate course in psychology.

---

[7] Ms. Doe has requested that her address not be published in this complaint to protect her identity and to protect her from further retaliation and sexual harassment.

26. Again, Ms. Does has a strong GPA and is highly regarded by her clinical advisors. As a above indicated, the University is removing her from the program. It is notable, however, that Ms. Doe's current PhD mentors do not agree with the Defendant University's decision to remove her from the program.

27. Starting in the August 2019 and continuing until around January 2021, Ms. Doe was subjected to ongoing and repeated sexual harassment from her professor and PhD mentor, Dr. Jeffrey Greeson.

28. More specifically, Defendant Greeson repeatedly asked Ms. Doe out on dates. This included Defendant Greeson asking Ms. Doe out to lunch and dinner on numerous occasions, and to go out for drinks late at night. Notably, one of Defendant Greeson's requested dates was at a bar after midnight.

29. On other occasions, Defendant Greeson would invite Ms. Doe to his office, so that they could be alone. He would then close the door and forcibly hug her without her consent, by pressing his body against hers.

30. Throughout this time, Ms. Doe turned down his requests for dates.

31. Ms. Doe told Defendant Greeson, in July 2021, that she was leaving his lab, because he would not stop asking her for dates and making advances. Defendant Greeson, however, would not *take no for an answer*. He responded by telling Ms. Doe that if she left his lab, he would "would do everything in [his] power to get [her] dismissed" from the program.

32. The message is apparent: if Ms. Doe dates Dr. Greeson, she will have a secure spot in the PhD program. Conversely, rebuffing Dr. Greeson will surely result in him removing her from the program.

33. Defendant Greeson's conduct is a classic example of *quid pro quo* sexual harassment under Title IX. *See* 34 CFR §106.30(a)(1).

34. On August 16 and August 18, 2022, Ms. Doe took her qualifying PhD examination. She passed six out of seven subject areas. The only area she failed was the area that Defendant Greeson graded.

35. It is notable that Defendant Greeson failed Ms. Doe by a range of one to four points.

36. In order to remain in the PhD program, Ms. Doe needed to have passed all of the sections of this examination. Because Defendant Greeson failed her, he now had the pretextual basis to remove her from the program.

37. On or around October 6, 2022, Ms. Doe timely appealed the examination, which was scored by Dr. Greeson. Ms. Doe concurrently filed a Title IX complaint with the University based on Dr. Greeson's sexual harassment.

38. As of the date of this filing, the Title IX process is still ongoing.

39. Again, the basis of Ms. Doe's appeal and Title IX complaint was the fact that Defendant Greeson said he would dismiss her from the program if she did not date him. Here, Defendant Greeson used failing Ms. Doe on the section he graded as the means by which to remove Ms. Doe from the program.

40. Around October 26, 2022, a no-contact order was issued to Defendant Greeson, which forbade him from communicating with Ms. Doe. On November 8, 2022, Defendant Greeson violated the no-contact order by emailing Ms. Doe.

41. From October 10, 2022, and continuing through the date of this complaint, the University conducted a Title IX investigation. The investigation is ongoing as of the date of this filing.

42. On July 11, 2023, the University informed Ms. Doe by letter that it would be dismissing her from the PhD program, pending any hearing and the grade appeal process.

43. Ms. Doe timely appealed and participated in an appeal hearing at the Department level in August 2023.

44. During the appeal hearing, Ms. Doe testified that much of her examination appeal concerns were excessively entangled with Dr. Greeson's *quid pro quo* sexual harassment and the Title IX process.[8]

45. Though the basis of the appeal was the sexual harassment, the panel refused to even consider these facts, and, insisted, that the appeal about the grades and Title IX were separate issues. They are not separate issues. Defendant Greeson gave her a bad grade because she did not reciprocate his advances. More to the point, the panel did not consider the fact that Defendant Greeson said he would fail Ms. Doe because she would not date him.

46. Additionally, Ms. Doe testified that prior to the hearing, in-house counsel indicated that any settlement would not include her returning to the University. Naturally, Ms. Doe testified that she felt that in-house counsel had predetermined the appeal outcome, so that Ms. Doe would be dismissed from the program.

47. When Ms. Doe testified about the Title IX concerns and that she believed the outcome was predetermined, in-house counsel began frantically gesturing, making faces, and jumping up and down in her seat.

48. In-house counsel then began to laugh and smile. Though it goes without saying, there was nothing funny about Ms. Doe's Title IX and procedural concerns. Ms. Doe is a survivor

---

[8] Ms. Doe would have testified further about the extent of the sexual harassment, which formed the basis of the lower grade, but the University forbade her from discussing the main aspect of her appeal.

of sexual harassment from one of the University employees. To Ms. Doe, this is not a joke because she is being retraumatized through the process of retelling her trauma.

49. It is curious that the University was required to offer Ms. Doe Title IX supports through the investigation process, only to allow its in-house counsel to openly mock her in the middle of the hearing. The University's conduct goes beyond deliberate indifference.

50. When in-house counsel engaged in this behavior during the hearing, Ms. Doe indicates that she felt unwelcomed at the University and unsupported through the process. She further indicates that her ability to freely participate in the process has been chilled by this retaliatory conduct.

51. When Ms. Doe concluded her testimony, she signed out of the virtual hearing room. Her attorney, however, remained behind because he noticed that in-house counsel had not left the hearing. In-house counsel promptly instructed Ms. Doe's attorney that he needed to correct her testimony regarding her Title IX and procedural concerns. When Ms. Doe's attorney informed her that it would not be appropriate for him to testify, as attorneys are not permitted to participate in this type of hearing, in-house counsel proceeded to testify to the panel that what Ms. Doe said was "false."

52. Here, after Ms. Doe left the hearing, in-house counsel attempted to pressure Ms. Doe's attorney to illicitly testify in her absence. In-house counsel then testified to correct the testimony with which she disagreed.

53. Again, the University's rules do not permit lawyer participation in the hearing process.

54. It should be noted that the University hearing rules do not allow their in-house counsel to attempt to sway the hearing panel in the absence of the student.

55. In-house counsel's conduct during the hearing, along with her back-door testimony, clearly denied Ms. Doe a fair hearing process, as it could have influenced the panel's decision.

56. After in-house counsel inserted herself as a witness, the panel voted to deny Ms. Doe's appeal and to dismiss her from the program.

57. The hearing panel denied Ms. Doe's appeal and determined that she was to be dismissed from the program. Because the University has a second tier to the appeal process, Ms. Doe timely appealed the panel's decision. The second tier of the appeal process is at the Dean's level.

58. On September 8, 2023, Ms. Doe participated in the appeal hearing at the Dean's level.

59. The University, after much resistance, finally allowed Ms. Doe to discuss the *quid pro quo* sexual harassment that formed the bulk of her appeal during the hearing.

60. Ms. Doe candidly shared the extent of the sexual harassment and how Defendant Greeson threatened to remove her from the program if she did not reciprocate his advances. At points during the hearing, Ms. Doe broke down and was on the verge of crying.

61. While most of the hearing panel maintained their composure, the University's second in-house counsel smiled at the camera at the end of Ms. Doe's testimony. Notably, none of the other panel members were laughing or smiling during the hearing. (*Id.*). There was nothing funny or lighthearted discussed during the hearing. Ms. Doe recounted Dr. Greeson's ongoing predatory behavior and how he sexually harassed her. It is unclear to Ms. Doe what was so funny or why in-house counsel was smiling after Ms. Doe shared her traumatic testimony.

62. Ms. Doe reports that she feels further traumatized by in-house counsel treating her testimony about sexual harassment as a joke. In addition, Ms. Doe reports feeling defeated in her ability to continue in the rest of the Title IX process, as the University will continue to treat it as a mockery.

63. Despite the fact that Ms. Doe 1.) has an ongoing Title IX investigation; and 2.) is in the middle of the appeal process, the University has taken steps to remove Ms. Doe from her program.

   a. On or around July 13, 2023, the University deactivated Ms. Doe's student email address.[9]

   b. On or around August 18, the University revoked Ms. Doe's parking pass.

   c. On or around August 23, the University demanded that Ms. Doe withdraw from the class for which she was registered. Ms. Doe initially did not withdraw from the class, because she is still participating in the Title IX investigation and she was informed that this was a full-semester course in which she would not be allowed to re-enroll later in the semester if she dropped the class. However, the University forced Ms. Doe to drop the class on September 18, 2023. Under duress, and only after the University forced her, Ms. Doe left the class. In other words, it constructively expelled her from the class.

   d. On or around  August 23, the University illegally removed Ms. Doe from all of her research and PhD projects.

   e. On or around August 23, the University informed Ms. Doe that it was promptly terminating her adjunct faculty position. This adjunct faculty position was not

---

[9] The University has since reactivated her email access on September 22, 2023. Nonetheless, the act of deactivating her email in response to the Title IX complaint is clearly retaliatory.

only part of her PhD program, Ms. Doe also received financial compensation for teaching.

f.   On or around August 23, the University informed Ms. Doe that she is unable to apply for her fall internship, which would further delay her status in the program and warrant her to stay an additional year.

g.   On or around August 23, the University informed Ms. Doe that she could no longer meet with her patients and to continue working with them.

h.   On August 23, 2023, the University removed Ms. Doe from all financial supports, which included travel funding that is allotted to each PhD student every year to attend conferences.

64. It is notable that the University stripped Ms. Doe of all of these aspects of her program before it rendered its final decision in the appeal process, and prior to the Title IX investigation being completed.

65. At the end of August 2023, Ms. Doe reported the subsequent Title IX retaliation to the University. On September 1, 2023, Ms. Doe met with the new Title IX coordinator, as part of a new investigation.[10]

66. During her meeting with the Title IX coordinator, Ms. Doe requested additional Title IX supports and to be reinstated in the program during the pendency of the Title IX investigation.

67. Since that Title IX meeting at the beginning of September, Ms. Doe has followed up several times with the Title IX coordinator about the Title IX supports and being

---

[10] It is notable that the University has had a *revolving door* of Title IX investigators during the process. Ms. Doe, in one year's time, is now working with her third Title IX  coordinator from the University.

reinstated in the program pending the Title IX process. As of the date of this filing, the Title IX coordinator has yet offer her supports. In fact, he refused to provide any supports to ensure her safety and well-being.

68. Central to Ms. Doe's grade appeal is Dr. Greeson's sexual harassment. Again, Dr. Greeson conditioned Ms. Doe's ability to remain in the program on her reciprocating his advances. Even though Ms. Doe's sexual harassment complaints are one of the main components of her appeal, the University has, nonetheless, elected to take this adverse action.

69. The University's adverse action is clearly retaliatory.[11]

70. Furthermore, the University's retaliation has interfered with Ms. Doe's ability to access the benefits of her program. In the instant matter, the University is denying Ms. Doe the ability to access her class, her ability to teach, the ability to conduct research, the ability to participate in the hearing process, her ability to complete her dissertation, her ability to apply for her internship, and her ability to work with her patients; all of which directly impacts her progress in the program and warrants her to stay an additional year. The program is set up so students typically apply for internship in their fourth year. Ms. Doe is currently a fifth-year, PhD student, and the University prohibited her from applying for internship this year.

71. In other words, before the Title IX and appeal processes are complete, the University has illegally removed her from the program.

---

[11]  It is notable that the University is dismissing Ms. Doe, but not Defendant Greeson. Here, the University will dismiss a student for a pretextual grade dispute, but allow a professor who sexually harasses students to remain. The perpetrator gets to stay, but the victim is forced to leave.

72. Upon information and belief, the University is intentionally and illegally removing Ms. Doe from her program as a result of her participating in the Title IX process.

73. Because of the ongoing sexual harassment, retaliation, and similar conduct from the University and Dr. Greeson, Ms. Doe has suffered severe emotional distress. Ms. Doe has been treating with several medical professionals because of the medical manifestations of her emotional distress. Ms. Doe's clinician has diagnosed her with post-traumatic stress disorder. It should also be noted that Ms. Doe is presenting with depressive and anxiety symptoms as a result of the University's and Dr. Greeson's conduct.[12]

74. The emotional distress has manifested in the form of, *inter alia*, heart palpitations, tachycardia, dermatological inflammation, and migraines. Ms. Doe is receiving medical treatment for all of these conditions. The Defendants' conduct is the direct cause of her conditions.

75. The conduct of the University and Defendant Greeson is the source of Ms. Doe's harm and concomitant damages.

76. This civil complaint now follows.

<u>**COUNT 1**</u>
**SEX AND GENDER DISCRIMINATION UNDER TITLE IX**
***Ms. Doe v. Rowan University***

77. Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

---

[12] The University's decision to remove Ms. Doe from the program by revoking her student and adjunct faculty status while the Title IX investigation is ongoing has caused her significant distress and impairment. Specifically, Ms. Doe had been treating with her clinician one time per week, but since experiencing retaliation from the program, she has been seeing her clinician twice per week in the recent months

78. Title IX, provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

79. The Defendant University is a federal funds recipient.

80. At all times relevant, Ms. Doe is a student, who is eligible to attend school at the University.

81. The University subjected Ms. Doe to sex- and gender-based discrimination, together with a hostile learning environment based on the same, when:

   a. The University allowed Dr. Greeson to subject Ms. Doe to ongoing, pervasive sexual harassment, as pleaded in ¶¶ 26-31.

   b. Again, as pleaded in ¶ 29 Dr. Greeson repeatedly asked Ms. Doe out on dates and took steps to seclude her in his office, so he could forcibly hug her, to name a few examples.

   c. This discriminatory treatment shocks the conscience. Furthermore, the discriminatory treatment, which, to a reasonable person, was so severe, pervasive, and objectively offensive that it denied Ms. Doe meaningful, equal educational access to her education, as pleaded in ¶¶ 27-33.

82. 34 CFR §106.30(a)(1) defines *quid pro quo* sexual harassment as, "An employee of the recipient conditioning the provision of an aid, benefit, or service of the recipient on an individual's participation in unwelcome sexual conduct." Here, the University and Defendant Greeson subjected Ms. Doe to *quid pro quo* sexual harassment when:

   a. As pleaded in ¶¶ 27-32, Defendant Greeson repeatedly asked Ms. Doe out for dates.

b. Ms. Doe became uncomfortable and informed Defendant Greeson that she was going to leave his lab to work with different professors.

c. When Ms. Doe rejected Dr. Greeson's advances, and when she informed him that she was leaving his lab, he told her that he "would do everything in [his] power to get [her] dismissed" from the program.

d. In September 2022, Defendant Greeson graded Ms. Doe's qualifying examination and failed her by a range of one to four points, which resulted in the University taking steps to dismiss Ms. Doe from the program.

e. In other words, Defendant Greeson kept his promise to remove her from the program.

83. The Defendant has been deliberately indifferent and/or has intentionally discriminated against Ms. Doe, which includes, *inter alia*, failing to offer her adequate supports during the program; allowing its staff, including in-house counsel, to behave in an abusive manner during hearings; allowing its staff, including in-house counsel, to mock Ms. Doe during hearings when she brought up Title IX concerns; when the University took preemptive steps to remove Ms. Doe from the program ***before*** the Title IX and appeal process concluded; when, upon information and belief, the University allowed in-house counsel to play a role in the decision-making process and/or it gave the appearance to Ms. Doe that in-house counsel was playing an active role in the decision-making process; when the University took steps to place Ms. Doe on probation; when it revoked her parking pass; when it removed her from her class; when it curtailed her research; when it did not allow her to apply for her internship; and when it removed her from the classes that she was teaching, to name a few examples.

84. As above pleaded, the University's conduct absolutely denied Ms. Doe access to the benefits of her education.

85. The University further denied Ms. Doe her educational benefits when Dr. Greeson's repeated advances and requests for dates forced Ms. Doe out of his lab.

86. The University further denied Ms. Doe her educational benefits when Defendant Greeson took steps to fail her on her qualifying examination and when the University decided to dismiss her from the program.

87. The University's intentional discrimination/deliberate indifference to the ongoing sex- and gender-based discrimination has denied Ms. Doe the benefits of her education. As such, the Defendants' conduct is the direct and proximate cause of the Plaintiff's damages.

88. Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 2**
**TITLE IX RETALIATION**
*Ms. Doe v. Rowan University*

89. Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

90. The Defendant University retaliated against Ms. Doe for utilizing or attempting to utilize the University's Title IX process. More specifically:

   a. **Protected Activity:** The Plaintiff had engaged in a protected activity when she participated in/attempted to participate in the Title IX investigation and hearing process.

b. **Adverse Action**: After Ms. Doe engaged in the Title IX process, the University has taken steps to remove her from the program and has placed her on probation. In fact, since the end of August 2023 through the date of this filing, the University has ended her involvement in the program.

c. The adverse action includes, *inter alia*, allowing its staff, including in-house counsel, to behave in an abusive manner during hearings; allowing its staff, including in-house counsel, to mock Ms. Doe during hearings when she brought up Title IX concerns; when the University took preemptive steps to remove Ms. Doe from the program ***before*** the Title IX and appeal process concluded; when, upon information and belief, the University allowed in-house counsel play a role in the decision-making process and/or it gave the appearance to Ms. Doe that in-house counsel was playing an active role in the decision-making process; when the University took steps to place Ms. Doe on probation in the middle of the Title IX process; when it revoked her parking pass; when it removed her from her class; when it curtailed her research; when it did not allow her to apply for her internship; and when it removed her from the classes that she was teaching, to name a few examples.

d. **Causation:** The University has taken all of these steps in response to and while Ms. Doe has participated in the Title IX process. The retaliatory conduct is directly denying Ms. Doe access to her education and to the benefits of her program.

91. The Defendant further retaliated against Ms. Doe when it violated 34 CFR 106.71. This Regulation affirms, "Intimidation, threats, coercion, or discrimination, including charges

against an individual for code of conduct violations that do not involve sex discrimination or  sexual harassment, but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or formal complaint of  sexual harassment, for the purpose of interfering with any right or privilege secured by title IX or this part, constitutes retaliation."

92.  In the instant matter, the University placed Ms. Doe on probation for allegedly not passing the examination by a range of one to four points. However, Ms. Doe's appeal alleges that the grade dispute concerned *quid pro quo* sexual harassment based on Defendant Greeson informing Ms. Doe that he would take steps to remove her from the program if she did not reciprocate his advances. In other words, the sexual harassment claim and appeal form the same complaint. In fact, Ms. Doe filed a concurrent Title IX complaint, which made exactly these same allegations.[13]

93. Despite the excessive entanglement with the grade appeal and the *quid pro quo* sexual harassment, and the fact they form the same complaint, the University is taking the adverse action, as pleaded in  ¶¶44-55;  ¶¶63a-h.

94. The retaliation is denying Ms. Doe the benefits of her program.

95. The retaliation is the direct and proximate cause of Ms. Doe's damages.

96. Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

---

[13] Despite Ms. Doe raising concerns about sexual harassment, the University allowed Defendant Greeson and his colleagues--people with whom Ms. Doe has conflicts for this reason--to evaluate her benchmarks.

<u>**COUNT 3**</u>
**FAILURE TO FOLLOW TITLE IX PROCEDURES RESULTING IN
DISCRIMINATION**
*Ms. Doe v. Rowan University*

97. Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

98. <u>**Violation of the  34 CFR  106.71 regarding retaliation and discipline:**</u> 34 CFR  106.71

affirms, "Intimidation, threats, coercion, or discrimination, including charges against an

individual for code of conduct violations that do not involve sex discrimination or  sexual

harassment, but arise out of the same facts or circumstances as a report or complaint of

sex discrimination, or a report or  formal complaint of  sexual harassment, for the purpose

of interfering with any right or privilege secured by title IX or this part, constitutes

retaliation." In the instant matter, as pleaded in ¶¶44-55;  ¶¶63a-h, the University

retaliated against Ms. Doe by taking preemptive steps to remove Ms. Doe from the

program ***before*** the Title IX and appeal process concluded.

99. 34 C.F.R. 106 required the  University to provide Ms. Doe with a hearing before making

any determinations. Instead, the University unilaterally removed her from the program

before convening any hearing or completing any of the processes.

100.     34 C.F.R. 106 required the University to provide Ms. Doe equitable treatment. The

University, however, has denied her any equitable treatment, which is demonstrated by

her removal and probation prior to it convening any Title IX hearing and refusal to

provide supports.

101.     The University has been intentionally and deliberately indifferent to Ms. Doe's

procedural rights under Title IX.

102.    The University's refusal to provide Ms. Doe with a Title IX process is the direct and proximate cause of her harm, including the fact that it has denied her access to her program without any procedural protections.

103.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 4**
**42 U.S.C. § 1983--Denial of Procedural Due Process**
*Ms. Doe v. Rowan University*

104.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

105.    The University violated Ms. Doe's rights to procedural due process under the Fourteenth Amendment when it did not afford her with a fair appeal process and a fair appeal hearing before unlawfully placing her on probation and/or removing her from the program.

106.    Public Universities are required to offer students a fair hearing process for removals from school.

107.    First, in-house counsel, on behalf of the University, denied Ms. Doe a fair hearing process by, *inter alia*, by making faces and gestures in the middle of Ms. Doe's appeal hearing when she testified about Title IX and procedural concerns; when in-house counsel began laughing in the middle of Ms. Doe's testimony about her Title IX and procedural concerns; when in-house counsel attempted to force Ms. Doe's attorney to testify in Ms. Doe's hearing to "correct" her testimony regarding Ms. Doe's Title IX and procedural concerns; when in-house counsel then testified herself regarding her opinion that Ms. Does's Title IX and procedural concerns were false.

108.     Second, the University denied Ms. Doe a fair process when the University took

preemptive steps to remove Ms. Doe from the program ***before*** the Title IX and appeal

process concluded; when, upon information and belief, the University allowed in-house

counsel play a role in the decision-making process and/or it gave the appearance to Ms.

Doe that in-house counsel was playing an active role in the decision-making process;

when the University took steps to place Ms. Doe on probation; when it revoked her

parking pass; when it removed her from her class; when it curtailed her research; when it

did not allow her to apply for her internship; and when it removed her from the classes

that she was teaching, to name a few examples. In other words, the University took all of

these unilateral steps without affording Ms. Doe due process, including going thorough

all steps of the hearing process.

109.     The University took all of the above steps to remove Ms. Doe from the benefits of her

education, to place her on probation, and to remove her from the program prior to

convening its final appeal hearing. This final appeal hearing was to determine whether

Ms. Doe is eligible to remain in the program. Despite the fact that the University had yet

to make a final determination through the hearing process, it is denying her all of the

educational benefits of her program.

110.     The University has constructively expelled Ms. Doe before the hearing process has

been completed.

111.     The University has denied Ms. Doe procedural due process by taking steps to

constructively expel/remove her from the program prior to the hearing process and the

outcome of the Title IX investigation, which, as of the date of this filing, is still pending.

112.    The University's predetermined outcome is a denial of her procedural due process

rights.

113.    The University has been deliberately indifferent to the requirements of procedural due

process.

114.    As a direct and proximate result of Defendants' willful conduct and deliberate

indifference, it violated Ms. Doe's right to procedural due process and to attend school.

The University's deliberate refusal to comply with the procedural requirements resulted in

Ms. Doe's damages and her ability to access her education.

115.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in

the prayer for relief.

**COUNT 5**
**42 U.S.C. § 1983--Denial of Equal Protection**
*Ms. Doe v. Rowan University*

116.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this

complaint and incorporates them herein.

117.    Plaintiff alleges that the Defendant University deprived her of her rights and

privileges secured to her by the Fourteenth Amendment by denying her equal protection

of law.

118.    Courts have found that discrimination on the basis of sex and gender violates

both the Equal Protection clause and Title IX. *Adams v. Sch. Bd.* 3 F. 4th 1299, 1304

(11th Cir. 2021).

119.    The University is a federal funds recipient.

120.    The Defendant denied Ms. Doe equal protection under the law by subjecting her to

sex- and gender-based discrimination, as pleaded in the above factual allegations. Thus,

by retaliating against Ms. Doe, removing her from the program, failing to provide her Title IX supports, and by denying her the benefits of her program, it subjected her discriminatory treatment and, therefore, denied her equal protection of the law.

121.    The University's customs, policies, and practices of denying Ms. Doe, a female student and victim of sexual harassment, with a Title IX process and the ability to remain in her program, amount to denying her equal protection of the law.

122.    The University has intentionally denied Ms. Doe equal protection of the law and/or has been deliberately indifferent to the same.

123.    The Defendant's conduct is the direct and proximate cause of the Plaintiff's harm.

124.    Wherefore, the Plaintiff prays for relief against the Defendant as hereinafter set forth in the prayer for relief.

### COUNT 6
### NEW JERSEY LAW AGAINST DISCRIMINATION
### *Ms. Doe v. All Defendants*

125.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

126.    The NJLAD prohibits discrimination on the basis of sex and gender.

127.    The NJLAD applies to colleges and universities.

128.    The NJLAD protects students from a hostile learning environment.

129.    Ms. Doe is entitled to attend school free from sex and gender-based discrimination, sexual harassment, and retaliation. Despite these entitlements, the University allowed Defendant Greeson to subject her to a hostile learning environment, which included ongoing sexual harassment.

130.    Ms. Doe was further entitled to attend school free from retaliation because she sought to use the Title IX process. The University, however, took adverse action against Ms.

Doe, which only further denied her access to her program, as pleaded in ¶¶44-55; ¶¶63a-h.

131.    As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied the Plaintiff the benefits of her program.

132.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

### COUNT 7
### NEW JERSEY LAW AGAINST DISCRIMINATION-*aiding and abetting*
### *Ms. Doe v. Dr. Greeson*

133.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

134.    Ms. Doe asserts that Defendant Greeson aided and abetted the University's tortious and discriminatory conduct.

135.    Defendant Greeson maintains a supervisory role, which includes overseeing the University's Mindfulness Stress and Health lab, mentoring  undergraduate and graduate students, and, upon information and belief, delegating duties to assistant professors.

136.    Defendant Greeson aided and abetted discrimination, which included taking steps to remove Ms. Doe from the program and relying on his colleagues to give Ms. Doe lower grades on the examination to justify her removal. Furthermore, Defendant Greeson failed Ms. Doe by a range of one to four points to provide the University with a pretextual justification to remove her from the program.

137.    Upon information and belief, Defendant Greeson was aware of the illegal conduct in which he was engaging and his respective roles as pleaded in the factual allegations.

138.    The Defendant knowingly and substantially assisted the principal violations, which, again, included taking steps to remove Ms. Doe from the program, concocting a

pretextual basis for the same, and subjecting her to a hostile learning environment through repeated sexual harassment.

139.    As a direct and proximate result of Defendant's deliberate indifference and intentional discrimination, the Defendant denied the Plaintiff the benefits of her program.

140.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

**COUNT 8.**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS[14]**
*Ms. Doe v. All Defendants*

141.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

142.    The Defendant committed the tort of intentional infliction of emotional distress against Ms. Doe:

   a.    The Defendants acted intentionally and recklessly, which included, *inter alia*, purposefully sexually harassing the Plaintiff; telling Ms. Doe that the Defendant would do whatever it took to get her removed from the program if she did not reciprocate his advances; taking steps to preemptively remove Ms. Doe from the program; and taking steps to retaliate against Ms. Doe, to name a few examples. Here, it is notable that the ongoing sexual harassment and the University's willingness to tolerate it have greatly caused Ms. Doe's emotional anguish.

   b.    The Defendant's conduct was extreme and outrageous, exceeding the bounds of decency and, thus, utterly intolerable in civilized society. Here, the power

---

[14] While the claim is being asserted against all defendants, it is understood that the Plaintiff is waiting for this claim to mature against the University, pursuant to New Jersey's Tort Claim Act. The Plaintiff, nonetheless, is asserting this claim against the individuals named in this complaint, and will await prosecuting this claim against the University until the conclusion of the six-month period.

imbalance between a professor and student shows the extent to which the sexual harassment far exceeded the bounds of decency. Defendant Greeson's abuse of his position of power, together with the ongoing sexual harassment, was clearly outrageous.

c.  The University's tolerance of the sexual harassment,[15] together with its retaliatory steps was extreme and outrageous, exceeded the bounds of decency and, thus, was utterly intolerable in civilized society.

d.  The emotional distress Plaintiff has suffered is so severe that no reasonable person could be expected to endure such distress.

e.  Ms. Doe is now experiencing the physical and medical manifestations of her emotional distress, which includes, but is not limited to, loss of sleep, panic attacks, loss of appetite, dermatological inflammation, heart palpitations, migraines, and issues with her digestive health.

f.  Ms. Doe is additionally struggling with post-traumatic disorder, along with experiencing symptoms of depression and anxiety about the way that the Defendants have treated her.

g.  As a result of the Defendants' conduct, Ms. Doe is treating with a therapist, neurologist, primary care physician, and a dermatologist to address the physical and medical manifestations of her emotional distress.

143.  Ms. Doe has suffered damages as a result of the emotional distress.

144.  The Defendants' conduct is the direct and proximate cause of the Plaintiff's damages.

---

[15] The University is aware that there is at least one other Title IX complaint that has been filed against Defendant Greeson.

145.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

## COUNT 9
## NEGLIGENT HIRING, RETENTION, FAILURE TO TRAIN[16]
### Ms. Doe v. Rowan University

146.    Plaintiff hereby realleges all matters set forth in the preceding paragraphs of this complaint and incorporates them herein.

147.    The Defendant University had a duty to exercise ordinary care when hiring, training, and supervising its staff who work with graduate students.

148.    The Defendant University had a duty to exercise ordinary care when hiring, training, and supervising its staff who conduct a Title IX investigation.

149.    The Defendant University had a duty to exercise ordinary care when hiring, training, and supervising its staff who participated in the appeal process and on hearing panels.

150.    The Defendant University knew or should have known that it was important to screen and only hire professors who did not attempt to date or make advances at graduate students; who condition the ability to remain in the program on whether or not the student reciprocates their advances; who do not retaliate against students for turning down their advances; who do not attempt to go out drinking with students; who do not seclude themselves alone with students, so they can force that student to give them a full-body hug; who do not sexually harass students; and who do not date students, to name a few examples.

---

[16] While the claim is being asserted against all defendants, it is understood that the Plaintiff is waiting for this claim to mature against the University, pursuant to New Jersey's Tort Claim Act. The Plaintiff, nonetheless, is asserting this claim against the individuals named in this complaint, and will await prosecuting this claim against the University until the conclusion of the six-month period.

151.    The Defendant University knew or should have known that it was important to screen and only hire faculty to participate in the appeals process and to sit on hearing panels who do not retaliate against students for reporting sexual harassment against faculty.

152.    The Defendant University knew or should have known that it was important to screen and only hire in-house counsel who do not retaliate against students for reporting sexual harassment; who do not insert themselves as witnesses into the hearing process; who do not make faces and gestures during hearings; and who do not smirk at victims of sexual harassment; to name a few examples.

153.    The Defendant University knew or should have known that it was important to screen and only hire Title IX investigators and coordinators who knew how to offer and provide supports to a victim of sexual harassment.

154.    The Defendant's lack of oversight, failure to properly train, failure to supervise, and failure to monitor its staff and contractors, and their failure to protect the Plaintiff, a victim of sexual harassment, is a direct and proximate cause of the Plaintiffs' damages.

155.    Wherefore, Plaintiff prays for relief against the Defendants as hereinafter set forth in the prayer for relief.

## **DAMAGES**

156.    Plaintiff suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of all Defendants, in an amount that shall be proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for the loss of enjoyment of life, both past and future; medical and medical-related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future;

pharmaceutical expenses, both past and future; loss of money spent for the apartment she rented for the 2023-2024 school year, including penalties/liquidated damages, rent, and related costs; loss of income and employment opportunities; and any and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Doe respectfully prays that the Court award her compensatory and restitutionary damages against all Defendants for, including, but not limited to, psychological treatment, lost wages, loss of future earnings, loss of enjoyment of life, emotional pain and suffering, interference with their civil rights, and reasonable attorneys' fees and costs of suit. Furthermore, Plaintiff seeks any and all equitable relief, together with any and all remedies, that the Court deems just and appropriate, including ordering the University to allow Ms. Doe to finish her PhD; to reverse any findings made by the University panel; to clear her student records of any negative marks pertaining to the probation and dismissal; and to cease and desist from all retaliation.

**DEMAND FOR A JURY TRIAL**

In accordance with federal law, Ms. Doe hereby demands a trial by jury on all appropriate issues.

Respectfully submitted,

**MONTGOMERY LAW, PLLC**
1420 Locust Street, Suite 420
Philadelphia, PA 19102

Dated: September 25, 2023                    By: _____

                                            Bradley R. Flynn
                                            NJ Bar ID No. 173362016