## UNSWORN DECLARATION OF JIM HAUGH

1. I, Jim A. Haugh, Ph.D., hereby provide this unsworn declaration pursuant to 28 U.S.C. § 1746.
2. I am the Director of Clinical Training for the Ph.D. Program in Clinical Psychology at Rowan University ("Program").  I am making this declaration based on my personal knowledge and review of Rowan University records.
3. I have known the student identified as "Jane Doe" in this litigation since she started in the Program.
4. The Program is currently Accredited on Contingency by the Commission on Accreditation of the American Psychological Association (APA)..  To maintain accreditation, among other things, the Program must graduate students who have successfully matriculated through the program and met program requirements.
5. Jane Doe commenced as a student in the Program in May 2019.
6. On September 18, 2020, Jane Doe was placed on a Performance Improvement Plan ("PIP") because, among other things, she did not pass her First Year Research Project (FYRP) and she was not making adequate progress with her research.  **See Exhibit ("Ex.") 1, attached.**
7. That PIP stated clearly: "the concerns expressed in this PIP are significant and in need of immediate and continued efforts to improve your research performance.  Failure to do so may result in you being placed on probation or being dismissed from the program." **Ex. 1.**
8. Ms. Doe attempted to remediate her FYRP in October 2020. She failed again. **Ex. 2.** In the letter notifying Ms. Doe of her failure, it was noted that the Program continued to have concerns with her "awareness, knowledge, and skill within this benchmark." It was also emphasized that "[w]e as the program, are not confident that you will continue to succeed in the Ph.D. in Clinical Psychology program at Rowan during this time."
9. On November 6, 2020, I, Dr. Jeff Greeson (Ms. Doe's advisor at the time), and Ms. Doe all met to discuss her ongoing issues in the Program.  That meeting was memorialized in a document dated November 13, 2020, titled "Professional Improvement Plan (PIP) and Notice of Probationary Status." **Ex. 3.**  In that document, it was noted that Ms. Doe's ongoing failure to pass the FYRP benchmark "is reason enough for dismissal from the program."  In an effort to work with Ms. Doe, however, the Program instead placed her on probationary status. **Ex. 3**.  Ms. Doe was required to address deficiencies in her scientific knowledge and methods, research/evaluation, reflective practice/self-assessment/self-care, and interpersonal skills and communication.  She was given one last chance to repeat the FYRP.  Ms. Doe signed off on the November 13, 2020, document. **Ex. 3**, **final page.**
10. Ms. Doe ultimately passed her FYRP.  After passing her FYRP, Ms. Doe's next milestone (after her thesis was approved) was to pass her Master's Thesis Defense.  She failed her initial Master's Thesis Defense in May 2021.  In advising her of this, Ms. Doe was informed that, "[i]n addition to difficulties achieving other research benchmarks, the failure to achieve this program benchmark in and of itself is reason

enough to seek dismissal from the program …." **Ex. 4**. Nonetheless, the Program decided, again, to give Ms. Doe another chance, and granted her "one attempt to remediate problems with your MA Thesis Defense." Ms. Doe was informed that "failure to pass this benchmark on a second attempt will result in the program moving toward dismissal from the program." **Ex. 4**.

11. Ms. Doe ultimately passed her MA Thesis Defense. To then proceed toward her Ph.D., she needed to, among other things, pass a Ph.D. Qualifying Exam.
12. The Ph.D. Qualifying Exam has seven sections.
13. On her first attempt, taking the exam over two separate days in August and September 2021, Ms. Doe failed four out of seven sections on the Qualifying Exam. **Ex. 5**.
14. The Program Handbook in effect for the 2021-2022 Academic Year discussed the Qualifying Exam in detail. **Ex. 6, pp. 54-56**. The Handbook explained that "[a]ll 7 content areas must be passed to matriculate within the Ph.D. program and be considered a doctoral candidate." **Ex. 6, p. 55**. It also stated that "[i]f 4 or more content areas are not successfully passed, the student will be considered to have failed the examination and will be required to complete the entire exam at the next available testing date." Finally, the Handbook explained that "[a] student who has failed the qualifying exam in part or entirely **twice** will be dismissed from the program" (emphasis in Handbook). **Ex. 6, p. 55**.
15. As Ms. Doe failed 4 content areas on her first attempt at taking the Qualifying Exam, she was deemed to have failed it entirely and was required to complete the entire exam at the next available testing date.
16. Another benchmark that a student must pass to proceed toward their Ph.D. is a "case conceptualization benchmark." **Ex. 6, pp. 29-30**. In short, the case conceptualization benchmark requires a student to make an oral presentation based on an actual case they had seen during their third-year practicum placement. **Ex. 6, p. 29**. The case conceptualization presentation is where a student must integrate and apply their knowledge of multiple competencies in the field of Clinical Psychology.
17. The Handbook explains that a passing grade on the case conceptualization benchmark is a score of 83% or better. The Handbook makes clear that "[u]nsuccessful completion of all or parts of the benchmark may lead to changes in funding, ability to complete additional coursework, and status in the program (i.e., probation, termination, removal from practicum). A student who has failed the benchmark in part or entirely **twice** will be dismissed from the program" (emphasis in Handbook). **Ex. 6, p. 30**.
18. Ms. Doe presented her case conceptualization after the Spring 2022 semester, on June 10th. On August 2, 2022, Ms. Doe was notified that her score on the case conceptualization benchmark was 70%, a failing score. **Ex. 7**.
19. As of today's date, Ms. Doe has not passed her case conceptualization benchmark.
20. Over the course of two days, August 16 and 18, 2022, Ms. Doe took her Qualifying Exam again.

21. By late September or early October 2022, Ms. Doe was verbally advised that she had failed at least one section of the Qualifying Exam on her second try.
22. On October 5, 2022, Ms. Doe was sent an email per her request of the breakdown of her Qualifying Exam scores for all 7 sections.
23. On October 6, 2022, Ms. Doe filed an appeal of this second Qualifying Examination failure.  **Ex. 8.**
24. On October 10, 2022, Ms. Doe filed a Title IX report against Dr. Greeson, identifying alleged conduct from when she was under Dr. Greeson's mentorship. That mentor relationship had ended, per the language in the Title IX report, on July 27, 2021.  **Ex. 9.**
25. On October 12, 2022, a letter was sent to Ms. Doe confirming and formally informing her that she had failed one section of her Qualifying Exam on her second try.  **Ex. 10**.
26. It is my understanding that in October 2022, the University opened a formal Title IX investigation based on Ms. Doe's report against Dr. Greeson.
27. On April 6, 2023, I was interviewed as part of that Title IX investigation.
28. On July 11, 2023, a letter was sent to Ms. Doe regarding the appeal of her second Qualifying Exam failure.  **Ex. 11**. Ms. Doe appealed that failure on three grounds.  In that July 11, 2023 letter, it was noted that one of Ms. Doe's appeal grounds was that Dr. Greeson had a "conflict of interest" in grading Ms. Doe's Qualifying Exam. She requested that Dr. Greeson's failing grade be thrown out, and that the particular section of her Exam that Dr. Greeson reviewed be re-graded.  Without ruling on the substance of her "conflict of interest" argument, Ms. Doe was informed that the Program had honored her request.  Dr. Greeson's grade was "thrown out", and two new graders were brought in to evaluate her work on that same section of the Qualifying Exam.  Ms. Doe failed again. That left two additional appeal grounds for consideration.  Ms. Doe was advised that her appeal on those two grounds would move forward for consideration by the Clinical Training Committee.
29. Ms. Doe's appeal of the (second) Qualifying Exam failure was heard by the Clinical Training Committee on August 10, 2023.  The Committee voted to deny her appeal, which was conveyed to Ms. Doe on August 11, 2023.  **Ex. 12**.  In that letter, the Clinical Training Committee reminded Ms. Doe that, "[p]er the Professional Improvement Plan and Probation Status Notice letter dated 11/15/21, failure of this second attempt to pass the Qualifying Exam is grounds for dismissal from the Ph.D. Program in Clinical Psychology."  The Clinical Training Committee noted that any decision regarding Ms. Doe's dismissal would be put on hold while she pursued additional appeal options.  The next appeal option regarding the failure of the Qualifying Exam was to the Dean of the College of Science and Mathematics.  **Ex. 12**.
30. On August 21, 2023, Ms. Doe appealed her second failure of the Qualifying Exam to the Dean of the College of Science and Mathematics.
31. For the 2023-2024 Academic Year, Ms. Doe would be entering her 5th Year in the Program.  This is the year when Ph.D. candidates typically seek and receive internships, teach, and provide care to patients in the field.

32. Given that Ms. Doe had twice failed the Qualifying Exam, it was determined that Ms. Doe should not be permitted to continue in her coursework, clinical work/practicum, and teaching at the university level. Ms. Doe remained on probation and could not participate in any official Program-related activities, until or unless her appeals were granted. **Ex. 13.**
33. Ms. Doe's appeal to the Dean regarding the second failure on her Qualifying Exam was considered during a hearing on September 8, 2023. By letter dated September 13, 2023, Ms. Doe was informed that her appeal was denied. **Ex. 14.** The next step, at that point, was a determination of Ms. Doe's status in the Program. Ms. Doe was advised that I would reach out to her regarding her status in the Program by September 29, 2023. **Ex. 14.**
34. When Ms. Doe filed her lawsuit on September 25, 2023, I had not even communicated again with Ms. Doe about her status. She remained in the Program, and had not been dismissed, contrary to multiple statements in her filings.
35. On September 27, 2023, I delivered to Ms. Doe a letter (incorrectly dated September 26, 2023) advising her that she was being dismissed from the Program. **Ex. 15.** I also advised Ms. Doe that she has the right to appeal that dismissal to the Dean, and can do so within ten (10) business days. My understanding is that Ms. Doe intends to take that appeal.
36. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on September 29, 2023

By:  Dr. Jim Haugh

Signature: _____